Guinness Ohazuruike, Esq.
GUINNESS LAW FIRM
Nevada Bar No. 11231
6845 W. Charleston Blvd, #A
Las Vegas, Nevada 89117
Telephone:(702) 473-9300
Facsimile:(702) 920-8112
guinnesslaw@gmail.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA.

| | |
|---|---|
| GODFREY MERE, an individual, | Case No. |
| Plaintiff, | |
| vs. | COMPLAINT AND JURY DEMAND |
| STATE OF NEVADA, Desert Willow Treatment Center; DR. GWENDOLYN GREENE, Administrator, Desert Willow Treatment Center; RONNIKA RUPERT, Director of Nursing, Desert Willow Treatment Center; ALBIE JERKINS, Quality Assurance Director, Desert Willow Treatment Center; DOES 1–10 and ROES I–X, inclusive, | |
| Defendants, | |

## INTRODUCTION

1. Plaintiff, Godfrey Mere, a citizen of United States and a Nigerian national, alleges that agents, employees, and directors of Defendants subjected him to discriminatory and disparate treatments based on his national origin and that they subjected him to hostile work environment and other tangible employment actions that adversely affected his job performance and the terms of his employment.

////

## PARTIES

1

_____
COMPLAINT AND JURY DEMAND

2. Plaintiff, Godfrey Mere, is a citizen of United States and a Nigerian national, employed by State of Nevada and working as a registered nurse at the Desert Willow Treatment Center.

3. Plaintiff, Godfrey Mere, domiciled in North Las Vegas, Clark County, Nevada.

4. Plaintiff is a member of the protected class, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq.

5. Defendant, State of Nevada Desert Willow Treatment Center, is an agency or entity of the State of Nevada doing business as a mental health treatment facility.

6. Defendant, Dr. Gwendolyn Greene, is employed by State of Nevada and working as the Administrator of Desert Willow Treatment Center, acting in her official capacity and within the scope of the agency.

7. Defendant, Ronnika Rupert, is employed by State of Nevada and working as Hospital Supervisor and the Director of Nursing at Desert Willow Treatment Center, acting in both capacities and scope of agency.

8. Defendant, Albie Jerkins, is employed by State of Nevada and working as Quality Assurance Director at Desert Willow Treatment Center, acting in her official capacity and within the scope of the agency.

9. At all relevant times Defendants employed in excess of fifteen employees and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq.

10. At all relevant times, Defendants employed more than five hundred employees in clinics, offices, and affiliates statewide including Desert Willow Treatment Center.

11. At all relevant times the conducts alleged herein were the acts or omissions or instructions or directions of certain individuals acting as administrators, managers, agents, and employees of Defendants including but not limited to GWENDOLYN GREENE, African American; RONNIKA RUPERT, African American; ALBIE JERKINS, white American; VIARA HRISTOV, white American; MARC YEE, Asian American; PEDRO MONTANO, Hispanic American; MARIA KINSEY, African American; JAYLEN GREENE, African American.

2
_____
COMPLAINT AND JURY DEMAND

12. At all relevant times the conducts of the named employees, directors, manager, and supervisor and agents, were within the scope of their employments, in concert with each other and on behalf of and for the benefit of their employer, the Defendants.

13. Defendants are liable for the acts and omissions of the individual employees, agents, manages, directors, and supervisors pursuant to the legal theory of vicarious liability and/or respondeat superior.

14. Defendants DOES and ROES I–X are individuals and entities whose names and capacities are unknown to Plaintiff who therefore sues them by fictitious names. Plaintiff shall seek leave of this court to amend the Complaint to substitute the true names of each such Defendants when information is ascertained.

15. Plaintiff shall seek permission of this honorable Court to amend the Complaint in line with evidence obtained through discovery and or witness testimony.

## JURISDICTION

16. This is an action arising under federal law, authorized and instituted pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section(s) 2000e et seq. and 42 U.S.C. Section 1981A as amended.

17. The jurisdiction of this Court is predicated upon 28 U.S.C. Section 1331 and 1343, to redress the unlawful deprivation of plaintiff's rights secured, guaranteed and protected by federal law.

18. The Jurisdiction of this court is also be appropriate under 42 U.S.C §§1981, 1983, and 28 U.S.C. §§ 2201 and 2202 relating to declaratory judgments.

19. The jurisdiction of this Court is also predicated upon the decision of the United States Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-48 (1976) that the Eleventh Amendment is not a jurisdictional bar to Title VII claims in federal court.

20. The jurisdiction of this court is further predicated upon the 1972 Amendments to Title VII of the Civil Rights Act of 1964, pursuant to §5 of the Fourteenth Amend.

## VENUE

21. Venue is proper in Clark County, Nevada wherein Plaintiff resides, and Defendant conducts businesses, where the alleged discriminatory conducts occurred.

_____
COMPLAINT AND JURY DEMAND

## ADMINISTRATIVE PREREQUISITES

22. Plaintiff has complied and exhausted all necessary administrative prerequisites for commencing an action under federal and Nevada laws through the following:

A. On or about October 16, 2022 Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission in tandem with the Equal Employment Opportunity Commission, EEOC.

B. Plaintiff promptly and diligently accommodated all requests for information and fully cooperated in the administrative agency's processing of this matter.

C. On March 31, 2023, Plaintiff received a Notice of Right to Sue and filed the lawsuit within 90 days of receiving the Notice.

## GENERAL ALLEGATIONS

23. Plaintiff was hired by Defendants on or about July 10, 2010, as Registered Nurse at Desert Willow Treatment Center a mental health facility under the ownership, management, and supervision of the State of Nevada.

24. Plaintiff has a Bachelor of Nursing Science and Master of Nursing Science degrees.

25. Plaintiff has worked as a registered nurse for over 20 years and worked 12 years as a registered nurse at Desert Willow Treatment Center.

26. Plaintiff has until recently worked under three administrations at the facility and had excellent employment record and excellent performance evaluations.

27. In 2020 the then Director of Nursing announced that she was retiring and needed an Assistant Director of Nursing to understudy and take her position after retirement.

28. The then Hospital Supervisor, Viara Hristov, moved up to the Assistant Director of Nursing position and the Hospital Supervisor position became open.

29. Plaintiff was already working at the facility and well qualified for the Hospital Supervisor position by virtue of education, training, experience, and seniority.

30. Plaintiff requested to be trained for the position of Hospital Supervisor but was not given opportunity to apply, interview, or participate in the selection process.

31. Defendants trained and offered the Hospital Supervisor position to Ronnika Rupert, another registered nurse who was not better qualified nor senior to the Plaintiff.

4

_____
COMPLAINT AND JURY DEMAND

32. Plaintiff was better qualified for the position of Hospital Supervisor than Ronnika by virtue of his education, training, experience, and seniority at the facility.
33. Plaintiff trained Ronnika Rupert on the job when she was first hired at the facility as a registered nurse having only about 5 years work experience.
34. At the time Defendants recruited for the position of Hospital Supervisor, Plaintiff was a registered nurse with 10 years nursing work experience at the facility.
35. At the time Defendant recruited for the position of Hospital Supervisor Ronnika was a registered nurse with only 2 years nurse work experience at the facility.
36. Defendant hired or promoted Ronnika Rupert, a similarly situated person outside of Plaintiff's national origin, that was not better qualified than the Plaintiff.
37. Plaintiff was not recommended, not interviewed, not considered nor offered the position of Hospital Supervisor because of his national origin especially his accent.
38. Defendants also hired or promoted and appointed Ronnika the Acting Director and later the Director of Nursing soon after the former one retired.
39. Plaintiff also showed interest to be trained as Director of Nursing when incumbent was retiring and the position became vacant, but he was also denied the position.
40. The incumbent Assistant Director of Nursing was not interested in the position because she had neither a Bachelor nor a Masters degree in nursing.
41. Plaintiff applied for the position of Director of Nursing when the incumbent retired and the position became vacant, but he was again not considered nor interviewed.
42. Plaintiff was never recommended nor considered nor invited to participate in the recruitment process regardless of his education, training, experience, and seniority.
43. Plaintiff was not recommended nor considered nor offered the position of Director of Nursing because of his national origin especially his accent.
44. Defendants recommended Ronnika for the position of Director of Nursing and she has been working in that capacity, occupying the office of the Director of Nursing.
45. Ronnika has since then been using her position and power to harass and threaten Plaintiff's job security and position as a Registered Nurse and Unit Supervisor.

46. Soon after Ronnika was appointed Hospital Supervisor, she confronted Plaintiff saying, "I heard you're complaining that I was given a position you deserve."
47. Ronnika hired new staff, friends from outside the facility, who under her directives often fabricate lies against Plaintiff, undermine his job performance, and incite patients against him, to get him terminated or force him to quit.
48. Ronnika, allowed and encouraged acts of insubordination against the Plaintiff by his subordinates who disobey his Unit orders, refuse to follow his directives, undermine his job performance, to force him to quit or be terminated.
49. Plaintiff soon became the target of crude jokes, mocking his accent, and giving him an offensive nickname "Fufu Man" a derogatory reference to Nigerian staple food and often referring to him as "the fucking Nigerian".
50. Plaintiff became fair game for all sorts of slights, insults, racial slurs and derogatory remarks, discriminatory treatments, false allegations and unjust disciplinary actions.
51. Plaintiff has severally reported the hostile work conducts to management including the Assistant Director of Nursing and the Administrator, but nothing was done.
52. Ronnika, openly question why the Plaintiff should get State job, falsely alleging that Nigerians get into positions because "American white government" offer them free scholarships, jobs, and positions they do not deserve in this country.
53. Ronnika, alleged that Nigerian doctors known to her, including Dr. Nwapa and Dr. Nwokike, were beneficiaries of U.S government scholarship funds.
54. Plaintiff has never been awarded any American scholarship whether public or private, rather he has funded his education through self-finance and student loans.
55. Ronnika, also complained about Nigerians dominance in American healthcare.
56. On March 23, 2022 Plaintiff complained to the Administrator about incessant and persistent verbal abuse, hostile actions, and harassment from other employees.
57. On April 28, 2022, Ronnika confronted Plaintiff alleging that he gave a patient medication without checking if the patient swallowed or kept them in the mouth.
58. Plaintiff denied the allegation, but Ronnika insisted that Pedro, a mental health technician and a cohort, had interviewed the patient and reported the incident to her.

COMPLAINT AND JURY DEMAND

59. When asked the patient denied ever making such statement to Pedro or anyone and confirmed that she swallowed all medications given to her by Plaintiff.
60. Defendants subjected Plaintiff to discriminatory supervision, constant monitoring, shadowing him whenever he is attending to patients, humiliating him most times.
61. On May 5, 2022 Plaintiff was not feeling well and was at his doctor's office. He called Ronnika to excuse him from work, but she threatened to fire him if he fails to report for duty that evening.
62. Plaintiff went to work straight from the doctor's office to avoid giving her reason to terminate his employment.
63. Plaintiff instructed Pedro, a technician under him, to prepare an incident report but Pedro called Ronnika at home, and she instructed Pedro not to follow the directions.
64. The techs working under Plaintiff openly and freely disobey his instructions and each time Plaintiff reports them to Administration no action is taken.
65. Defendants are always enabling insubordination against Plaintiff to undermine his job performance, frustrate his employment and force him to quit or be terminated.
66. Plaintiff was reprimanded by Pedro, a technician and subordinate just two weeks on the job, for poor work ethics and Plaintiff complained to Administration.
67. On April 30, 2022 Ronnika called Plaintiff to her office and in the presence of Viara threatened him saying, "I'm now part of Administration. I have my eyes on you…"
68. Defendant agents often talk down on Plaintiff in the presence of junior employees and in staff meetings, often asking him "you are still here" "when will you go".
69. Plaintiff was once threatened by Pedro who made his finger into the shape of a gun and pointed it at Plaintiff in the presence of the Acting Director of Nursing.
70. Plaintiff complained severally to Administration about Pedro coming to his work Unit every other day to taunt him, but nothing was done to prevent such hostile acts.
71. The facility has a policy requiring staffs to stay in their assigned Units and not walk back and forth to other Units to socialize unless there is call for their assistance.
72. Pedro, a technician, said to the Plaintiff that he would never work under a Nigerian supervisor and continually taunted Plaintiff about his nationality.

COMPLAINT AND JURY DEMAND

73. Plaintiff reported the taunting and insubordination, but Administration did nothing.
74. Defendant always take Plaintiff away from his calm Sedona Unit to the volatile Sunrise Units insisting that he, instead of the assigned nurse, should suffer the stress of managing crises and troubles in there.
75. In accordance with seniority rights, Plaintiff should not be moved from his calm Unit in favor of someone over whom he has many years of seniority.
76. Plaintiff is required to prepare Incident Reports about situations he did not witness even when the nurses involved the incidents are ready to prepare the Report.
77. Plaintiff has developed anxiety and depression and high blood pressure because of the hostile work environment and Defendants adverse tangible employment actions.
78. Plaintiff has exhausted all his sick leave in the course of getting medical treatment for healthcare challenges caused by the hostile work environment.
79. Since June 2022 Plaintiff has indicated availability and requested overtime for weekend shifts but Defendants have denied him overtime opportunity.
80. Defendants give all overtime in the Unit to Marc Yee, a registered nurse and Asian American over whom Plaintiff has 6 years seniority in the facility.
81. Defendants allow and Marc Yee works 16 hours per day on Mondays, Tuesdays, Wednesdays; and 16 hours per day on Saturdays and Sundays, making 40 regular hours and 40 overtime hours, a total of 80 hours per week since June 2022 till date.
82. Plaintiff is always singled out and punished for medication error, even Tylernol, but when Marc Yee had medication error the Defendants forced Plaintiff to write the Incident Report and never punish Marc Yee for the wrongdoing.
83. Defendants sometimes instruct Plaintiff to re-write Incident Reports against patients interests to cover up errors or wrongdoing by their friends and preferred employees.
84. On May 19, 2022 Ronnika summoned Plaintiff to her Director of Nursing office and in the presence of Assistant Director of Nursing and the Quality Assurance Director, instructed Plaintiff to change the Incident Report he had prepared that was not favorable to Pedro, a mental health technician and one of her friends.

COMPLAINT AND JURY DEMAND

85. Plaintiff was reminded in a threatening manner by the Quality Assurance Director, that the Incident Report he wrote in the past caused the firing of Shey Holmes.
86. On May 31, 2022 Viara, moved Plaintiff to the Unit that Marc Yee was assigned for evening shift because there was impending trouble with kids there.
87. Plaintiff was always penalized for coming minutes late or leaving minutes early even for medical reasons and his paycheck would be deducted accordingly.
88. Defendants never penalize the other nurse, Marc Yee, who often comes hours late and frequently leave hours early yet he would receive full paycheck for hours he did not work.
89. Plaintiff is the supervisor in Sedona Unit but when technicians under him leave the Unit without his permission the Administration does not allow him discipline them.
90. Plaintiff was subjected to constant fear of termination. On June 3, 2022 nurse Tan RN an ally of Ronnika asked Plaintiff if he had secured another job. Plaintiff was never looking for another job and never said that he was looking for another job.
91. On June 6, 2022 Plaintiff again requested for weekend swing shift overtime and reminded management that only Marc Yee had been getting all the overtime.
92. Defendants required Plaintiff to work nightshift in violation of his doctor's advice contained in an official medical note.
93. Defendants denied Plaintiff weekend overtime for shifts that are okay and not a violation of his doctor's advice regarding his health condition.
94. On June 8, 2022 Maria, a technician and ally of Ronnika, was supposed to be sent to troubled Sunrise Unit but Ronnika sent Melissa because Maria has seniority over her, yet Ronnika would send Plaintiff to Sunrise Unit instead of Marc Yee over whom Plaintiff has 6 years seniority.
95. Plaintiff had severally requested in writing and in person that Administration not allow him and Pedro work in same Unit and Pedro should only come to his Unit when needed but Administration allows the taunting and hostile conducts unabetted.
96. Defendant never issued written warning to Marc Yee who often comes late to work.

COMPLAINT AND JURY DEMAND

97. On July 5, 2022 Plaintiff was late to work and Ronnika issued him written warning for tardiness that occurred on 6/24/22, the day his car broke down on the way to work, and threatened him to look for another job or seek transfer to another facility.

98. On August 27, 2022 Marc Yee was given overtime evening shift that Plaintiff had requested and Marc Yee boasted that "overtime is for only Americans and Asians, never for fucking Nigerians".

99. On August 28, 2022 Plaintiff was a mere witness to an incident which the nurse involved had prepared an Incident Report but Plaintiff was reprimanded for errors in the report and directed to do the required corrections contrary to nursing practice.

100. On September 3, 2022 Marc Yee was given overtime evening shift for Saturday and Sunday that Plaintiff had requested but was not considered and when Plaintiff raised the issue Marc Yee told him that "overtime is not for a fucking Nigerian", that "it's for Americans and Asians who speak better English".

101. On September 5, 2022 Mariah left work an hour early and she was paid 8 hours just as when she comes work late but Plaintiff has never been paid full 8 hours whenever he is late or leave early despite his seniority, being Unit supervisor.

102. On September 9, 2022 Maria left work at 9:30pm instead of the scheduled 11:15pm and Plaintiff reported to Administration yet Maria was paid full 8 hours.

103. On September 14, 2022 Pedro left work at 9:30pm instead of 11:15pm and he was still paid full 8 hours.

104. On September Pedro left work abruptly at 10:20pm instead of scheduled 11:15pm and still he was paid full 8 hours.

105. Ronnika said to Plaintiff how much she hated American government for giving Nigerians scholarship and jobs that should be given to African Americans.

106. On September 19, 2022 Marc worked overtime shift from 6:45am to end 11:15pm but he left over two hours early at 8:42pm and he was paid full 16 hours.

107. Same day Pedro worked overtime shift from morning to end at 11:15pm but he left three hours early at 7:45pm and was paid full 16 hours.

COMPLAINT AND JURY DEMAND

108. Whenever Plaintiff come to work late or leaves early, even for medical reasons, Defendant would deduct the hours from his paycheck or sick leave PTO.

109. On September 20, 2022 Plaintiff was moved out of his calm Unit to volatile Unit and Marc Yee was moved from the volatile Unite to replace him in the calm Unit.

110. Plaintiff complained to Administration about all the discriminatory and disparate treatments he was being subjected to, but Administration did nothing.

111. On September 20, 2022 Plaintiff was summoned to Administration office and given an impromptu job performance evaluation by Ronnika.

112. Plaintiff has worked over ten years, serving three Administrations prior to the arrival of Ronnika and Plaintiff always had excellent performance evaluation.

113. Plaintiff's complaints regarding discrimination and disparate treatment in the facility annoyed Ronnika and she retaliated by giving him an unsatisfactory, dismal, and negative performance evaluation.

114. Defendants took further retaliatory measures by placing Plaintiff on one month probation subject to a review like a new hire, after twelve years of service.

115. Plaintiff is required to have technicians under him to initials their job assignments.

116. Defendants never require that other Nurses do the same, rather other Nurses are allowed to complete job assignments without obtaining initials from technicians.

117. Defendants exposed Plaintiff personnel records to third parties, technicians under his supervision even knew and discussed that Plaintiff is on probation.

118. On October 26, 2022 Plaintiff was moved from his scheduled Unit to a Unit that had COVID patients and Marc Yee was moved to take Plaintiff's Unit.

119. Administration always warned other Nurses and Techs before sending them to a Covid infected Unit, but they did not warn Plaintiff the day they sent him to the Covid infected Unit.

120. On November 2, 2022 Defendants required Plaintiff to work double shift including a night shift regardless of his doctor's instruction that Plaintiff should not work night shifts due to depression, anxiety, blood pressure.

121. Plaintiff complained about the discriminatory and disparate treatments he suffered to the Administration, but no meaningful remedial measures were taken.

122. Plaintiff suffered depression, anxiety, high blood pressure and distress, requiring medical treatment and he has incurred medical bills for the treatments.

123. On March 6, 2023 Plaintiff was physically, violently hit on his chest by a Tech, Audrey Cooper, because Plaintiff had politely corrected her regarding treatment of a patient.

## FIRST CAUSE OF ACTION
(Discrimination on the Basis Of National Origin)

124. Plaintiff repeats allegations contained in preceding paragraphs by reference.

125. Plaintiff had the education, skill, and experience required for the position of Hospital Supervisor at Desert Willow Treatment Center in November 2021.

126. Defendants subjected Plaintiff to intentional discrimination based on national origin by considering especially his Nigerian nationality and accent and failing to interview, recommend, or select him for the position of Hospital Supervisor at the Desert Willow Treatment Center.

127. Defendants subjected Plaintiff to intentional discrimination based on national origin by selecting, recommending, or employing an African America candidate that was not better qualified than him for the position of Hospital Supervisor at the Desert Willow Treatment Center.

128. Plaintiff had the education, skill, and experience required for the position of Director of Nursing at the Desert Willow Treatment Center in June 2022.

129. Defendants subjected Plaintiff to intentional discrimination based on national origin by considering especially his Nigerian nationality and accent and failing to

interview, recommend, or select him for the position of Director of Nursing at the Desert Willow Treatment Center.

130. Defendants subjected Plaintiff to intentional discrimination based on national origin by selecting, recommending, or employing an African America candidate that was not better qualified than him for the position of Director of Nursing at the Desert Willow Treatment Center.

131. Defendants' intentional discrimination against Plaintiff based on his national origin as a Nigerian is a violation of Title VII of Civil Rights Act 1964 as amended.

132. As a result of Defendant discriminatory action in failing to select Plaintiff for the position of Hospital Supervisor, Plaintiff has suffered loss of earning in the amount of $6 per hour been the differential wage he could have earned.

133. Plaintiff is entitled to recover back-pay of the differential wage of $6 per hour multiplied by 80 hours per paycheck from November 2021 being the sum of $16,640 as at this date, the total to be determined at the time of judgment.

134. As a result of Defendant discriminatory action in failing to select Plaintiff for the position of Director of Nursing, Plaintiff has suffered loss of earning in the amount of $12 per hour been the differential wage he could have earned.

135. Plaintiff is entitled to recover back-pay of the differential wage of $12 per hour multiplied by 80 hours per paycheck from June 2022 being the sum of $18,720 as at this date, the total to be determined at the time of judgment.

136. As a result of Defendants discriminatory employment actions Plaintiff has suffered general damages for humiliation, sleepless nights, pain and suffering and he is entitled to recover $300,000 or the maximum compensation allowed.

SECOND CAUSE OF ACTION
(Disparate Treatment on the Basis Of National Origin)

137. Plaintiff repeats allegations contained in preceding paragraphs by reference.

138. Defendants subjected Plaintiff to disparate treatment based on national origin by treating him less favorably than other similarly situated employees outside his

national origin to wit: discriminatory supervision, discriminatory enforcement of attendance policy and discipline, discriminatory terms of employment and benefits.

139. Defendants subjected Plaintiff to a pattern of disparate treatment, tangible employment actions adversely affecting his job performance and employment.

140. Defendant's disparate treatments of Plaintiff based on national origin are in violation of Title VII of Civil Rights Act 1964 as amended and NRS 613.320.

141. As a result of Defendants' disparate treatments and tangible employment actions Plaintiff has suffered loss of earning from denied overtime opportunity.

142. Plaintiff complained about the disparate treatments to Administration but nothing meaningful was done to stop or prevent future occurrence.

143. Plaintiff is entitled to recover lost overtime pay for equitable number of overtime hours at the rate of hour/half for 40 hours per paycheck being $2,820 from June 2022 to this date, a total of $50,760.

144. As a result of Defendant disparate treatments and tangible employment actions Plaintiff has suffered general damages for humiliation, sleep nights, pain and suffering and he entitled to recover $300,000 or the maximum compensation allowed.

### THIRD CAUSE OF ACTION
(Hostile Work Environment)

145. Plaintiff repeats allegations contained in preceding paragraphs by reference.

146. Defendant subjected Plaintiff to hostile work environment based on national origin by mocking his accent, racial slurs "Fufu Man", taunting and harassment, and intentionally exposing him to Covid-19 virus, undermining his work, humiliations and physical threats aimed at forcing him to quit his job.

147. Defendant's hostile conducts were daily, relentless, severe, pervasive and created a work environment that a reasonable person would consider humiliating, intimidating, hostile, abusive and beyond the boundary of decency.

COMPLAINT AND JURY DEMAND

148. Defendants created hostile work environment daily, starting from November 2021 till date that interferes with Plaintiff's job performance and adversely affects the terms of his employment.

149. Plaintiff complained about the hostile work environment to Administration but nothing meaningful was done to stop or prevent future occurrence.

150. Defendants hostile work environment against Plaintiff based on his national origin is a violation of Title VII of Civil Rights Act 1964 as amended.

151. Defendants' hostile work environment caused Plaintiff to suffer from anxiety emotional distress, sleeplessness, depression, and high blood pressure requiring medical treatment at Psyche Care Nevada and Southwest Medicals Associates.

152. Plaintiff is entitled to recover medical bills over $9,929) and counting, all incurred for treatment of depression, high blood pressure, and anxiety.

153. As a result of Defendants' hostile work environment Plaintiff has suffered general damages for humiliation, emotional distress, anxiety and depression and he is entitled to recover $300,000 or the maximum compensation allowed by law.

## FOURTH CAUSE OF ACTION
(Retaliation)

154. Plaintiff repeats allegations contained in preceding paragraphs by reference.

155. Defendants took tangible and adverse employment actions against Plaintiff as a retaliation after and because he engaged in a protected action, complaining to the Nevada Equal Rights Commission and EEOC about the discrimination.

156. Defendants retaliated against Plaintiff by giving him an unsatisfactory job evaluation, probation, and by moving him from calm job station to volatile and unfavorable job station.

157. Defendants' unsatisfactory performance evaluation of Plaintiff is in contrast with past years of excellent job evaluations and therefore a pretext for retaliation.

158. As a result of Defendants' retaliatory adverse employment actions, Plaintiff suffered humiliation, depression, high blood pressure requiring medical treatment.

COMPLAINT AND JURY DEMAND

159. As a result of Defendants' retaliatory employment measures and hostility Plaintiff has suffered general damages for humiliation, emotional distress, anxiety and depression and he is entitled to recover $300,000 or the maximum compensation allowed by law.

## ATTORNEY FEES

1. Plaintiff was compelled to retain the services of an attorney to file Charges at the administrative agency, to file and prosecute this lawsuit and, therefore, he is entitled to recover reasonable attorney fees and costs incurred.

## PRAYER FOR RELIEF

WHEREOF Plaintiff prays fir judgment against Defendants as follows:

1. Declaration that the actions of Defendants constitute discrimination based on national origin in violation of Title VII of Civil Rights Act 1964 as amended.
2. Declaration that the actions of Defendants constitute disparate treatment based on national origin in violation of Title VII of Civil Rights Act 1964 as amended.
3. Declaration that the actions of Defendants constitute hostile work environment in violation of Title VII of Civil Rights Act 1964 as amended.
4. Declaration that the actions of Defendants constitute retaliation in violation of Title VII of Civil Rights Act 1964 as amended.
5. Award of special damages and general damages as follows:
    a. $9,929 medical bills incurred, the total amount to be determined.
    b. $16,640 differential back-pay for position of Hospital Supervisor.
    c. $18,720 differential back-pay for position of Director of Nursing.
    d. $50,760 back-pay for denied overtime opportunity.
    e. $300,000 general compensation for intentional discrimination.
    f. $300,000 general compensation for disparate treatments.
    g. $300,000 general compensation for hostile work environment.
    h. $300,000 general compensation for retaliation.
    i. Award of reasonable attorney fees and Court costs in this action.
    j. Award of post-judgment interest at the legal rate until paid in full.

k.  Such other and further relief as this honorable Court may deem just and proper.

## DEMAND FOR JURY

Plaintiff, Godfrey Mere, exercises his right under the United States Constitution and applicable statutes and requests that all issues of fact in this action be determined by a jury.

Dated this 4th day of March, 2023.                    */s/Guinness Ohazuruike___*
                                                      Guinness Ohazuruike, Esq.
                                                      GUINNESS LAW FIRM
                                                      6845 W. Charleston Blvd, #A
                                                      Las Vegas, Nevada 89117
                                                      Telephone:(702) 473-9300
                                                      Facsimile:(702) 920-8112
                                                      guinnesslaw@gmail.com
                                                      *Attorney for Plaintiff*

## VERIFICATION OF COMPLAINT

I, Godfrey Mere, affirms and states that I am the Plaintiff in this proceeding; that I have read the Complaint and knows the contents thereof; that the same is true to the best of my knowledge except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

*"I declare under penalty of perjury under the law of the State of Nevada and the United States that the foregoing is true and correct."*

Dated this 4th day of March, 2023.                    */s/Godfrey Mere*
                                                        GODFREY MERE